FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 21, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JASON W.,[1] | No. 1:24-CV-03156-MKD |
| Plaintiff, | ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER |
| v. | |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,[2] | ECF Nos. 10, 16 |
| Defendant. | |

---

[1] To protect the privacy of plaintiffs in social security cases, the Court identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' briefs.  ECF Nos. 10, 16.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court reverses the Commissioner's decision and remands the case for the immediate calculation and award of benefits.

**JURISDICTION**

On December 28, 2018, Plaintiff applied for Title XVI supplemental security income benefits, alleging a disability onset date of March 12, 2018.  Tr. 275-83.  The application was denied initially and on reconsideration.  Tr. 170-200.  Plaintiff appeared before an administrative law judge (ALJ) on August 26, 2020.  Tr. 86-111.  On September 23, 2020, the ALJ denied Plaintiff's claim.  Tr. 12-30.  This Court subsequently remanded the matter on November 10, 2021.  Tr. 1079-87.  The ALJ held a second hearing on June 9, 2022.  Tr. 1021-53.  On June 29, 2022, the ALJ denied Plaintiff's claim.  Tr. 987-1015.  This Court again remanded the matter on May 11, 2023.  Tr. 1663-75.  The ALJ held a third hearing on May 21, 2024.  Tr. 1641-59.  On July 5, 2024, the ALJ denied Plaintiff's claim.  Tr. 1616-40.  Per 20 C.F.R. § 416.1484, the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

ORDER - 2

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where

ORDER - 3

1  it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at

2  1115 (quotation and citation omitted).  The party appealing the ALJ's decision

3  generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*,

4  556 U.S. 396, 409-10 (2009).

5  **FIVE-STEP EVALUATION PROCESS**

6  A claimant must satisfy two conditions to be considered "disabled" within

7  the meaning of the Social Security Act.  First, the claimant must be "unable to

8  engage in any substantial gainful activity by reason of any medically determinable

9  physical or mental impairment which can be expected to result in death or which

10  has lasted or can be expected to last for a continuous period of not less than twelve

11  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

12  "of such severity that he is not only unable to do his previous work[,] but cannot,

13  considering his age, education, and work experience, engage in any other kind of

14  substantial gainful work which exists in the national economy."  42 U.S.C. §

15  1382c(a)(3)(B).

16  The Commissioner has established a five-step sequential analysis to

17  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

18  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

19  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

20

ORDER - 4

gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

ORDER - 5

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

ORDER - 6

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 28, 2018. Tr. 1622.

At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease; headaches; major depressive disorder; generalized anxiety disorder; schizotypal personality disorder; and attention-deficit hyperactivity disorder. Tr. 1622.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 1623.

The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [H]e can never climb ladders, ropes or scaffolds, can occasionally perform other postural activities such as stooping, kneeling, crouching and crawling, and should have no concentrated exposure to hazards and vibration. Mentally, [Plaintiff] is limited to simple, routine tasks with only occasional, superficial interaction with the public or coworkers, but no collaborative tasks with coworkers, and is capable of adapting to simple, occasional workplace changes.

Tr. 1625.

ORDER - 7

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 1631. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as routing clerk, mail sorter; price marker; and small product II assembler. Tr. 1631-32.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  Tr. 1633.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly assed the medical opinion evidence;

2.  Whether the ALJ properly assessed Plaintiff's testimony;

3.  Whether the ALJ properly assessed Plaintiff's blackouts;

4.  Whether the RFC is consistent with disability; and

5.  Whether the ALJ erred at step five.

ECF No. 10 at 2.

Because the Court concludes the ALJ erred with respect to the first and second issue, as discussed below, and these errors are sufficient for purposes of

ORDER - 8

satisfying the credit-as-true rule, it is not necessary to reach Plaintiff's remaining

assignments of error.

**DISCUSSION**

**A. Medical Opinion Evidence**

For claims filed on or after March 27, 2017, new regulations apply that

change the framework for how an ALJ must evaluate medical opinion evidence.

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL

168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.

The new regulations provide that the ALJ will no longer "give any specific

evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to Rules*, 2017

WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a),

416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all

medical opinions or prior administrative medical findings from medical sources.

20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

The factors for evaluating the persuasiveness of medical opinions and prior

administrative medical findings include supportability, consistency, relationship

with the claimant (including length of the treatment, frequency of examinations,

purpose of the treatment, extent of the treatment, and the existence of an

examination), specialization, and "other factors that tend to support or contradict a

medical opinion or prior administrative medical finding" (including, but not

ORDER - 9

limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-

ORDER - 10

supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies.  *Id*.  The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records.  *Id.* at 792.  However, the ALJ is not required to make specific findings regarding the relationship factors.  *Id*.  Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent.  *Id*.

Plaintiff argues the ALJ improperly assessed three medical opinions.

ORDER - 11

1          *1. Dr. Bowes and Dr. Eisenhauer*

2          Dr. Bowes examined Plaintiff on February 22, 2019, conducting a clinical

3    interview and performing a mental status examination.  Tr. 661-69.  Among other

4    things, Dr. Bowes opined Plaintiff would be markedly limited in performing

5    activities within a schedule, maintaining regular attendance, being punctual within

6    customary tolerances without special supervision, communicating and performing

7    effectively in a work setting, maintaining appropriate behavior in a work setting,

8    and completing a normal workday and workweek without interruptions from

9    psychologically based symptoms.  Tr. 664.  On review, Dr. Eisenhauer opined

10   these functional limitations are "consistent with the severity noted in the

11   evidence," Tr. 670, and expressly adopted these limitations, Tr. 673.  The ALJ

12   found both opinions "not entirely persuasive."  Tr. 1631.

13         The ALJ first discounted the opinions as internally inconsistent, noting that

14   Plaintiff "was cooperative, with euthymic mood, normal thought process, and

15   intact memory and concentration" during the examination.  Tr. 1631.  These are

16   not reasonable inconsistencies.  Plaintiff's performance during a clinical

17   interview–conducted in a close and sterile setting with a psychiatric professional–

18   is not reasonably inconsistent with the doctors' opined limitations concerning

19   Plaintiff's ability to, among other things, complete a normal workday and

20   workweek without interruptions from psychologically based symptoms.

ORDER - 12

1        The ALJ next discounted the opinions as "inconsistent with other evidence

2   in the record," noting, without citation to the record, that "[l]ater records showed

3   [Plaintiff] had generally mild findings on mental exam, consisting mostly of

4   anxious mood, and that medications helped his mental symptoms, to the point

5   where [Plaintiff] indicated he no longer felt he had anxiety."  Tr. 1631.  This

6   finding is legally erroneous.  An ALJ's rejection of a clinician's opinion on the

7   ground that it is contrary to unelaborated evidence in the record is "broad and

8   vague," and fails "to specify why the ALJ felt the [clinician's] opinion was

9   flawed."  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989); *see also*

10  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (rather than merely stating

11  their conclusions, ALJs "must set forth [their] own interpretations and explain why

12  they, rather than the doctors', are correct") (citing *Embrey v. Bowen*, 849 F.2d 418,

13  421-22 (9th Cir. 1988)).  The Court need not comb the administrative record to

14  find specific conflicts.  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

15       Third, the ALJ discounted the opinions as inconsistent with the "treatment

16  provided to [Plaintiff] and medication prescribed to date," noting, without further

17  elaboration or citation to the record, that these are "too minimal to support the level

18  of restriction reflected" in the opinions.  Tr. 1631.  On a prior remand from this

19  Court, however, the Appeals Council already rejected this reasoning.  *See* Tr.

20  1090-91 (explicitly noting that Plaintiff "continued to report significant symptoms

ORDER - 13

1  of anxiety and depression despite counseling and taking a number of psychotropic

2  medications").  By issuing a substantially similar finding, the ALJ contravened the

3  clear mandate of the Appeals Council.  The Court's review of this already-rejected

4  reason is therefore precluded by the doctrine of the law of the case.  *See Stacy v.*

5  *Colvin*, 825 F.3d 563, 567 (9th Cir. 2016).

6       Finally, the ALJ discounted the opinions as—again, without any

7  elaboration—"inconsistent with the findings of the State agency psychological

8  consultants."  Tr. 1631.  An ALJ may not reject a medical opinion "with

9  boilerplate language that fails to offer a substantive basis for" the ALJ's

10  conclusion.  *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("[A]n ALJ

11  errs when he rejects a medical opinion or assigns it little weight while doing

12  nothing more than ignoring it, asserting without explanation that another medical

13  opinion is more persuasive, or criticizing it with boilerplate language that fails to

14  offer a substantive basis for his conclusion.") (citation omitted).

15       The ALJ accordingly failed to properly assess the opinions of Dr. Bowes and

16  Dr. Eisenhauer.

17       *2. Dr. Jackson*

18       Plaintiff argues the ALJ erred by discounting Dr. Jackson's opinion.  ECF

19  No. 10 at 18-20.  Defendant does not meaningfully defend the ALJ's treatment of

20  the doctor's opinion, arguing only that "Plaintiff merely offers a competing view of

ORDER - 14

1  the evidence." ECF No. 16 at 14. The Court need not determine whether the ALJ

2  properly assessed Dr. Jackson's opinion, however, because the Court's

3  determination regarding the ALJ's assessment of the opinions of Dr. Bowes and

4  Dr. Eisenhauer is sufficient for performing the credit-as-true analysis.

5  **B. Plaintiff's Testimony**

6  Plaintiff faults the ALJ for failing to rely on reasons that were clear and

7  convincing in discrediting his symptom claims. ECF No. 10 at 4-15. An ALJ

8  engages in a two-step analysis to determine whether to discount a claimant's

9  testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2.

10  "First, the ALJ must determine whether there is objective medical evidence of an

11  underlying impairment which could reasonably be expected to produce the pain or

12  other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

13  "The claimant is not required to show that [the claimant's] impairment could

14  reasonably be expected to cause the severity of the symptom [the claimant] has

15  alleged; [the claimant] need only show that it could reasonably have caused some

16  degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

17  Second, "[i]f the claimant meets the first test and there is no evidence of

18  malingering, the ALJ can only reject the claimant's testimony about the severity of

19  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

20  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

ORDER - 15

omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an

individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 1629.

The ALJ first discounted Plaintiff's testimony as inconsistent with Plaintiff's daily activities: "[Plaintiff] indicated that he cares for pets, can and does prepare simple meals, can go out alone, is able to navigate public transportation, goes shopping in stores, can handle money including using a checkbook, and enjoys gaming, watching television, and reading."  Tr. 1629.  Plaintiff's activities are neither inconsistent with nor a valid reason to discount his allegations.  *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be

ORDER - 17

disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *Reddick*, 157 F.3d at 722 ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits). Similarly, Plaintiff's activities do not "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603).

The ALJ next discounted Plaintiff's testimony as inconsistent with Plaintiff's "essential routine and/or conservative in nature" level of treatment. Tr. 1629. On a prior remand from this Court, however, the Appeals Council already rejected this reasoning. *See* Tr. 1679 ("[I]n discounting [Plaintiff] alleged symptoms related to his severe lumbar spine impairment, the Administrative Law Judge pointed to, in part, the conservative treatment received by [Plaintiff]. However, the record reflects that during the period at issue [Plaintiff] was treated with significant combination of pain medications, including narcotics for his pain…. [T]he record also showed [Plaintiff] had previously received physical therapy treatments in the past and that those treatments did not improve his back pain.") (internal citations omitted). By issuing a substantially similar finding, the ALJ contravened the clear mandate of the Appeals Council. The Court's review of

ORDER - 18

this already-rejected reason is therefore precluded by the doctrine of the law of the case. *See Stacy*, 825 F.3d at 567.

Finally, the ALJ discounted Plaintiff's testimony as inconsistent with Plaintiff's "reported improvement" with treatment. Tr. 1630 ("[A]s of February 2024 [Plaintiff] denied having mental symptoms that affected his daily activities, and had normal testing results between August 2023 through March 2024."). Although "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability," *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citing 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1)), substantial evidence does not support this finding. In support of the ALJ's finding, the ALJ first cited to neurology treatment notes relating to Plaintiff's degenerative disc disease. *See* Tr. 1782-89. These are not reasonably related to Plaintiff's mental health symptoms. The ALJ also found that although Plaintiff "did present to the ER due to a panic attack, he noted that he had not taken his prescribed medications in over a month, which supports that they were helping his symptoms." Tr. 1630. This finding runs afoul of the Appeals Council's prior determination—which occurred after Plaintiff's hospitalization due to a panic attack—that the record contains "significant abnormal clinical findings" in the mental health context. Tr. 1679. Further, on this record, the ALJ's finding is in tension with Ninth Circuit precedent. *See Garrison*, 759 F.3d at 1017 ("Cycles of improvement and

ORDER - 19

debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.  Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms.  They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace.") (cleaned up); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

**C. Scope of Remand**

When the ALJ commits legal error in denying a claim for benefits, as here, the Court "ordinarily must remand to the agency for further proceedings before directing an award of benefits."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017).  The Social Security Act, however, grants district courts flexibility in certain circumstances to reverse the ALJ's decision and remand for an immediate award of benefits rather than further administrative proceedings.  *Treichler v.*

ORDER - 20

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Plaintiff seeks such a remedy. ECF No. 10 at 22.

Remand for an immediate award of benefits is allowed only when three requirements (collectively referred to as the "credit-as-true" rule) are satisfied: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether that evidence is claimant testimony or a medical opinion; (2) there are no outstanding issues that must be resolved before a disability determination can be made, the record is fully developed, and further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the record as a whole would require the ALJ to find the claimant disabled on remand. *Leon*, 880 F.3d at 1045; *Garrison*, 759 F.3d at 1020. Even if all three requirements are met, the decision whether to remand a case for further proceedings or simply award benefits is in the Court's discretion. *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023). The Court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

All three steps of the credit-as-true rule are satisfied here. The first requirement is satisfied because, as discussed above, the ALJ failed to properly assess the medical opinion evidence and Plaintiff's testimony.

ORDER - 21

As for the second requirement, the Court finds further administrative proceedings would serve no useful purpose in light of the unusual posture of this case. Three administrative hearings have already been held since Plaintiff first applied for benefits in December 2018. The administrative record spans 1,999 pages. The Ninth Circuit has stressed that precedent "foreclose[s] the argument that a remand for the purpose of allowing the ALJ to have a mulligan [to revisit the medical opinions and testimony that were improperly rejected] qualifies as a remand for a 'useful purpose' under the ... credit-as-true analysis." *Garrison*, 759 F.3d at 1021-22 (citations omitted); *see also Knorr v. Berryhill*, 254 F. Supp. 3d 1196, 1220 (C.D. Cal. 2017) ("[R]emanding for the ALJ to reconsider this evidence, which the ALJ already had an opportunity to review, would simply be allowing the ALJ to have a second bite at the apple."). The record does not require further proceedings.

Third, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. As noted above, the ALJ erroneously discounted two medical opinions and testimony that support a significantly more restrictive RFC than the RFC formulated by the ALJ.

Finally, the record as a whole does not create serious doubt as to whether Plaintiff is disabled within the meaning of the Social Security Act. *See Garrison*, 759 F.3d at 1021. Defendant has not pointed to any particular aspect of this case

ORDER - 22

that raises serious doubt, where the ALJ has already been afforded multiple opportunities to assess the evidence—and has continued to employ reasoning expressly rejected by the Appeals Council—and Plaintiff has offered consistent testimony at each hearing.  Moreover, the credit-as-true rule is a "prophylactic measure" designed to motivate Defendant to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application.  *Treichler*, 775 F.3d at 1100.  Despite prior attempts, the administrative decisions continue to not be properly supported, causing extreme delay.

The Court has no serious doubts as to whether Plaintiff is disabled and finds that the significant delay since Plaintiff applied for disability in 2018 also weighs in favor of a finding of disability.  Under these circumstances, the Court exercises its discretion to remand this matter for a finding of disability.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Frank Bisignano as Defendant and update the docket sheet.

2. Plaintiff's Brief, **ECF No. 10**, is **GRANTED**.

ORDER - 23

3. Defendant's Brief, **ECF No. 16**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED August 21, 2025.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 24